**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| *Plaintiff,* | |
| v. | **Case No. CR-23-5-RAW** |
| **TRAVIS GENE SLOAT,** | |
| *Defendant.* | |

**GOVERNMENT'S TRIAL BRIEF**

COMES NOW the United States of America, by and through Christopher J. Wilson, United States Attorney, and Anthony C. Marek and Jessie K. Heidlage, Assistant United States Attorneys, and respectfully submits its brief for trial in the above-captioned case.

**STATUS OF THE CASE**

A.  A jury trial is currently set for July 5, 2023, at 9:00 a.m., before the Honorable Ronald A. White.

B.  Estimated time for trial (including jury selection) is 3 days.

C.  The defendant is not in custody.

D.  Defendant filed a motion seeking a waiver of trial by jury (Doc. No. 27), to which the government responded that it does not consent to a nonjury trial (Doc. No. 29).  The Court denied Defendant's motion. (Doc. No. 30).

E.  The United States expects to call approximately 18 witnesses.

F.  An interpreter is not needed.

G.  The United States has proposed one stipulation, regarding interstate and foreign commerce, to Defendant.  As of the date of filing, no response has been received. The parties will confer about exhibits and file a notice of preadmission of exhibits if necessary.

H.      Defendant has not given the United States notice of any affirmative defense. The defendant has not provided the United States with reciprocal discovery in relation to this matter. The defendant has not provided the United States with notice of intent to offer an expert witness.

## FACTUAL OVERVIEW

In the evening hours of March 21, 2022, Defendant, Travis Gene Sloat, a teacher at Okay High School, called Mark Hayes, the principal of Okay High School, and asked for a meeting with Hayes at Hayes's house.  When Defendant arrived, he told Hayes that Defendant intended to resign immediately.  Defendant told Hayes that, in December 2021, his 14-year-old daughter, A.S., had her 14-year-old friend, J.C., over to spend the night.  Defendant said that during J.C.'s stay, Defendant used the bathroom and realized only when he finished that he had left his cell phone in the bathroom.  But before he realized that, as Defendant told Hayes, J.C. used the same bathroom.  Defendant heard nothing about this series of events until on March 21, 2022, when Defendant's wife received a text message directly from J.C. with a video attached.

The video was captured using J.C.'s cell phone.  In the frame is Defendant's own cell phone, on which J.C. played back a portion of the video that Defendant's phone captured of J.C. using the bathroom in the Sloats' house in December 2021.  Defendant told Hayes that J.C. deleted the latter video from his phone.  Defendant denied having known about the video on his phone or that his phone was recording.  In a forensic interview, J.C. said that after she asked Defendant whether she could take a shower in his bathroom — because the only other bathroom in the house, typically used by Defendant's sons, was unclean — Defendant insisted that he use the bathroom first, which he did.  Defendant knew that J.C., then 14 years old, would be completely unclothed shortly after he left the bathroom.

According to the time on Defendant's iPhone as seen in the frame, J.C. captured the video at approximately 6:30 p.m.  The photo/video application is open on Defendant's phone, and the video playing on the phone has a timestamp of 6:26 p.m. on the same day (as indicated by "Today" displayed above the playing video), indicating that the video recorded by Defendant's phone was captured about four minutes before J.C. played it back.

The first visible frame of the video contains a bathroom sink and vanity.  No more than a second after the video begins to play, Defendant, whose entire face appears in the video and who wears basketball shorts and no shirt, visibly manipulates his recording phone by 180 degrees so that the rear-facing camera captures the rest of the bathroom, including the toilet and part of the shower.  Rather than set his phone down on the vanity, Defendant set the phone on a pile of clothing directly beneath the vanity.  When Defendant is satisfied with the position of the phone, he stands up and appears to look down at his phone.  The screen on Defendant's phone briefly darkens while J.C. skips forward through the video on Defendant's phone.  Next seen is J.C. herself, sitting on the toilet and holding her phone, dressed in a long-sleeve t-shirt and with her jeans pulled down to her knees.  She wipes herself.  She leans forward, then appears to look directly at Defendant's phone.  She reaches for the phone, grabs it, and turns it around so that the pile of clothing is seen. J.C.'s recording ends.

After J.C. stopped Defendant's phone from recording, she talked to her friend, A.S., and asked A.S. for the passcode to Defendant's phone.  A.S. asked why, and J.C. explained that she noticed that Defendant's phone was recording and she wanted "to make sure it didn't see anything."  A.S. gave Defendant's passcode to J.C., who then unlocked Defendant's iPhone, located the video that was recorded of her in the Sloats' bathroom, deleted it, then accessed the

Recently Deleted folder of the iPhone's Camera Roll application.[1]  J.C. played the video from the

Recently Deleted folder, which can be confirmed because the word "Recover" is seen in the

bottom-right corner of Defendant's phone, offering the ability to recover the video from the

Recently Deleted folder.  After she finished making her own recording, J.C. permanently deleted

the video recorded by Defendant's phone because she did not want it seen by anybody.  None of

J.C.'s intimate areas are depicted in the 12-second video, but J.C. explained during her forensic

interview that when she watched the full video — a portion of Defendant's video that J.C.'s phone

did not record — she saw her pubic area as she stood up from the toilet.

## PROCEDURAL HISTORY

A January 10, 2023 indictment charges Defendant with one count of attempted sexual

exploitation of a child in violation of 18 U.S.C. §§ 2251(a) and 2251(e).  (Doc. No. 2)

## OFFENSE CHARGED IN THE INDICTMENT

### COUNT ONE

**ATTEMPTED SEXUAL EXPLOITATION OF A CHILD/
USE OF A CHILD TO PRODUCE A VISUAL DEPICTION
[18 U.S.C. §§ 2251(a) & 2251(e)]**

The defendant is charged in Count One of the Indictment with Attempted Sexual

Exploitation of a Child, or Use of a Child to Produce a Visual Depiction, in violation of Sections

2251(a) and 2251(e) of Title 18 of the United States Code.

---

[1] In effect, the Recently Deleted folder is one step short of permanent deletion.  It allows for the browsing of photos and videos that a user has marked for deletion, but such photos and videos remain on the iPhone for 30 days unless they are either (a) recovered by a user, or (b) permanently deleted by a user.  *See* Apple, *Delete or hide photos and videos on iPhone*, https://support.apple.com/guide/iphone/delete-or-hide-photos-and-videos-iphb4defbde9/ios (last visited Mar. 22, 2023).

In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

| | |
|---|---|
| First: | At the time alleged, J.C. was under the age of 18 years; |
| Second: | The defendant attempted to employ or use J.C. to engage in sexually explicit conduct; |
| Third: | The defendant acted with the purpose of producing a visual depiction of such conduct; and |
| Fourth: | The defendant attempted to produce the visual depiction using materials that had been mailed, shipped, or transported across state lines or in foreign commerce by any means, including by computer or cellular phone. |

A person is "used" if they are photographed or videotaped.

"Sexually explicit conduct" means actual or simulated lascivious exhibition of the anus, genitals, or pubic area of a person.

In deciding whether an exhibition is lascivious, you may consider these six factors: (1) whether the focal point of the visual depiction is on the child's genitalia or pubic area; (2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity; (3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child; (4) whether the child is fully or partially clothed, or nude; (5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; and (6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.  This list is not exhaustive, and a visual depiction need not satisfy any single factor to be deemed lascivious.  Instead, you must determine whether the visual depiction is lascivious based on its overall content.  It is for you to decide the weight or lack of weight to be given any of these factors.

The term "visual depiction" includes video or picture, whether made or produced by electronic, mechanical, or other means. It includes undeveloped film and videotape, and data stored on computer disk or by electronic means which is capable of conversion into a visual image.

An item is "produced" if it is produced, directed, manufactured, issued, published, advertised, created, made, or is in any other way brought into being by the involvement of an individual participating in the recording of child pornography.

The government is not required to prove that the defendant knew that J.C. was under the age of 18.

## LEGAL AND EVIDENTIARY ISSUES

**Rule of sequestration**

The government requests that the Court instruct the witnesses for both the United States and the defense to comply with Rule 615 of the Federal Rules of Evidence.  The United States will request that FBI Special Agent Christopher Worshek be allowed to sit at counsel table as the case agent.

**Evidentiary matters**

1.  Federal Rule of Evidence 404(b)(2)

The government will file, contemporaneously with this brief, a notice of its intent to introduce evidence of other acts pursuant to Federal Rule of Evidence 404(b)(2).  The government produced to Defendant discovery materials in its possession related to these other acts on or about February 6, 2023, February 7, 2023, March 8, 2023, and April 12, 2023.

2.  Self-serving hearsay

The government may admit certain of Defendant's statements as party-opponent nonhearsay under Federal Rule of Evidence 801(d)(2).  Should Defendant attempt to admit his

own out-of-court statements, however, such self-serving statements would be inadmissible hearsay and the government would object to their admission.  *See, e.g.*, *United States v. Bishop*, 291 F.3d 1100, 1110 (9th Cir. 2002) (excluding testimony of what the defendants told an accountant despite that the testimony "may [have fallen] under the 'state of mind' exception" because the proposed testimony would have been "self-serving" and "duplicative of the defendants' own testimony about their state of mind, if they chose to testify").

3.  Testimony of school counselor Sarah Russell

The government may call in its case-in-chief Sarah Russell, school counselor at the elementary and high schools in Okay.  A teacher told Russell that J.C. was crying and appeared to be struggling emotionally, which led to interactions between Russell and J.C.

To the extent that Russell testifies regarding out-of-court statements related to her by J.C., such statements would be admissible under Federal Rule of Evidence 803(3): "A statement of the declarant's then-existing state of mind . . . or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed . . . ."

Further, because Russell's conversation with J.C. occurred shortly after Defendant resigned, leading to rumors and intense discussion regarding J.C., J.C.'s statements to Russell would be admissible under Federal Rule of Evidence 803(2): "A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused."

**PROPOSED WITNESSES AND TIME OF DIRECT EXAMINATION**

The United States may call the following witnesses in its case-in-chief.  The anticipated time for the direct examination and a summary of the expected testimony is provided for each witness. ***Note:*** This is not an exhaustive list of potential witnesses in the case, nor is it an all-

inclusive list of the topics each witness will discuss at trial. Rather, the following is merely the

witnesses and topics the United States believes may be necessary.

**Witnesses relating to the charged offense**

1.      J.C.
        Approximately 45 minutes
        Victim

J.C. will testify that she discovered Defendant's cell phone recording her while she used

the toilet in his bathroom.  She will also testify as to her state of undress at the time.

2.      Mark Hayes
        Approximately 30 minutes
        Principal of Okay High School

Hayes will testify that Defendant resigned on or about March 21, 2022, related to the

charged incident.

3.      Special Agent Jeff Rutherford, FBI
        Approximately 30 minutes
        Forensic examiner

Rutherford will testify that he extracted and processed the data from electronic devices,

including computers and cell phones, used by Defendant.  He will testify that the cell phone used

to videorecord J.C. in Defendant's bathroom traveled in interstate or foreign commerce.

4.      Special Agent Jordan Siri, FBI
        Approximately 45 minutes
        Case agent

Siri will testify that he examined the data extracted from Defendant's devices and

discovered several items of evidence relevant to the investigation.

5.      Alicia Sloat
        Approximately 30 minutes
        Wife of Defendant

Alicia Sloat will testify that J.C. sent her the video described above, and that she convinced

Defendant to resign his position with Okay Public Schools.

> 6.     A.S.
>        Approximately 30 minutes
>        Daughter of Defendant

A.S. will testify about her conversation with J.C. in Defendant's bathroom.

> 7.     H.M.
>        Approximately 20 minutes
>        Friend of J.C.

H.M. will testify that she was with J.C. at Wal-Mart in January 2023 when J.C. noticed

Defendant, who stared at them.  H.M. will testify that J.C. became emotional.

> 8.     S.R.
>        Approximately 20 minutes
>        Former student of Defendant

S.R. will testify that, in or about 2022, she was with J.C. at the dam in Fort Gibson when

J.C. noticed Defendant and became emotional.  S.R. will testify that Defendant pulled out his cell

phone and appeared to be recording them while giving them "dirty looks."

> 9.     A.C.
>        Approximately 30 minutes
>        Mother of J.C.

A.C. will testify about the circumstances surrounding J.C.'s visits to Defendant's residence

and the effects of the charged incident on J.C.

> 10.    E.R.
>        Approximately 30 minutes
>        Grandmother of J.C.

E.R. will testify about the circumstances surrounding J.C.'s visits to Defendant's residence

and the effects of the charged incident on J.C.

11.     Sarah Russell
        Approximately 30 minutes
        School counselor at Okay High School

Russell will testify about her interactions with J.C. leading up to J.C.'s disclosure of the

charged incident.

**Witnesses relating to 404(b)(2) evidence**

12.     J.S.
        Approximately 20 minutes
        Former coworker of Defendant

J.S. will identify herself in at least one photograph of a nude woman that was located on

Defendant's school-owned computer and that Defendant apparently emailed to himself.

13.     A.T.
        Approximately 20 minutes
        Former student of Defendant

A.T. will testify that Defendant solicited inappropriate photographs from her.

14.     B.C.
        Approximately 20 minutes
        Former student of Defendant

B.C. will testify regarding a text-message conversation she had with Defendant regarding

his solicitation of inappropriate photographs from A.T.

15.     C.T.
        Approximately 20 minutes
        Former student of Defendant

C.T. will identify herself in at least one photograph of a partially nude girl that was located

on Defendant's school-owned computer.

16.     K.G.
        Approximately 30 minutes
        Former student of Defendant

K.G. will testify regarding her relationships with Defendant and Defendant's daughter, A.S.  She will also testify that Defendant solicited inappropriate photographs from her.

17.    A.R.
Approximately 20 minutes
Former student of Defendant

A.R. will testify regarding her relationship with Defendant.  She will testify that Defendant asked her and her friend for the use of their cell phones.

18.    T.R.
Approximately 20 minutes
Former student of Defendant

T.R. will testify regarding her relationship with Defendant, including the fact that Defendant asked to access her Snapchat account.  T.R. will testify that Defendant expressed interest in seeing her body when she was changing into a bathing suit at Defendant's house.

## CONCLUSION

The United States respectfully submits this trial brief to anticipate the factual and legal issues which may arise at trial.  The United States requests that this Court grant it leave to submit additional briefing should subsequent issues be identified.

Respectfully submitted,

CHRISTOPHER J. WILSON
United States Attorney


s/    Anthony C. Marek
ANTHONY C. MAREK
State Bar of Michigan #P76767
Assistant United States Attorney
520 Denison Avenue
Muskogee, Oklahoma 74401
Telephone: (918) 684-5100
Anthony.Marek@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I, hereby certify that on June 6, 2023, I electronically transmitted the attached documents to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Matthew R. Price
Attorney for Defendant

s/    <u>Anthony C. Marek</u>
ANTHONY C. MAREK
Assistant United States Attorney