IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>TRAVIS GENE SLOAT,<br><br>*Defendant.* | Case No. CR-23-5-RAW |

### GOVERNMENT'S NOTICE OF INTENT TO INTRODUCE EVIDENCE OF OTHER ACTS PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b)(2)

The United States hereby gives notice to the Court and to Defendant that it intends to admit at trial evidence of Defendant's other acts pursuant to Federal Rule of Evidence 404(b)(2) as fully detailed below.

### I.  STATEMENT OF FACTS

In the evening hours of March 21, 2022, Defendant, Travis Gene Sloat, a teacher at Okay High School, called Mark Hayes, the principal of Okay High School, and asked for a meeting with Hayes at Hayes's house.  When Defendant arrived, he told Hayes that Defendant intended to resign immediately.  Defendant told Hayes that, in December 2021, his 14-year-old daughter, A.S., had her 14-year-old friend, J.C., over to spend the night.  Defendant said that during J.C.'s stay, Defendant used the bathroom and realized only when he finished that he had left his cell phone in the bathroom.  But before he realized that, as Defendant told Hayes, J.C. used the same bathroom.  Defendant heard nothing about this series of events until on March 21, 2022, when Defendant's wife received a text message directly from J.C. with a video attached.

1

The video was captured using J.C.'s cell phone.  In the frame is Defendant's own cell phone, on which J.C. played back a portion of the video that Defendant's phone captured of J.C. using the bathroom in the Sloats' house in December 2021.  Defendant told Hayes that J.C. deleted the latter video from his phone.  Defendant denied having known about the video on his phone or that his phone was recording.  In a forensic interview, J.C. said that after she asked Defendant whether she could take a shower in his bathroom — because the only other bathroom in the house, typically used by Defendant's sons, was unclean — Defendant insisted that he use the bathroom first, which he did.  Defendant knew that J.C., then 14 years old, would be completely unclothed shortly after he left the bathroom.

According to the time on Defendant's iPhone as seen in the frame, J.C. captured the video at approximately 6:30 p.m.  The photo/video application is open on Defendant's phone, and the video playing on the phone has a timestamp of 6:26 p.m. on the same day (as indicated by "Today" displayed above the playing video), indicating that the video recorded by Defendant's phone was captured about four minutes before J.C. played it back.

The first visible frame of the video contains a bathroom sink and vanity.  No more than a second after the video begins to play, Defendant, whose entire face appears in the video and who wears basketball shorts and no shirt, visibly manipulates his recording phone by 180 degrees so that the rear-facing camera captures the rest of the bathroom, including the toilet and part of the shower. Rather than set his phone down on the vanity, Defendant set the phone on a pile of clothing directly beneath the vanity.  When Defendant is satisfied with the position of the phone, he stands up and appears to look down at his phone.  The screen on Defendant's phone briefly darkens while J.C. skips forward through the video on Defendant's phone.  Next seen is J.C. herself, sitting on the toilet and holding her phone, dressed in a long-sleeve t-shirt and with her jeans pulled down to

her knees. She wipes herself. She leans forward, then appears to look directly at Defendant's phone. She reaches for the phone, grabs it, and turns it around so that the pile of clothing is seen. J.C.'s recording ends.

After J.C. stopped Defendant's phone from recording, she talked to her friend, A.S., and asked A.S. for the passcode to Defendant's phone. A.S. asked why, and J.C. explained that she noticed that Defendant's phone was recording and she wanted "to make sure it didn't see anything." A.S. gave Defendant's passcode to J.C., who then unlocked Defendant's iPhone, located the video that was recorded of her in the Sloats' bathroom, deleted it, then accessed the Recently Deleted folder of the iPhone's Camera Roll application.[1] J.C. played the video from the Recently Deleted folder, which can be confirmed because the word "Recover" is seen in the bottom-right corner of Defendant's phone, offering the ability to recover the video from the Recently Deleted folder. After she finished making her own recording, J.C. permanently deleted the video recorded by Defendant's phone because she did not want it seen by anybody. None of J.C.'s intimate areas are depicted in the 12-second video, but J.C. explained during her forensic interview that when she watched the full video — a portion of Defendant's video that J.C.'s phone did not record — she saw her pubic area as she stood up from the toilet.

Defendant is charged with one count of attempted sexual exploitation of a child in violation of 18 U.S.C. §§ 2251(a) and 2251(e). (Doc. No. 2.) The case is scheduled on the Court's July 2023 trial docket. (Doc. No. 25.)

---

[1] In effect, the Recently Deleted folder is one step short of permanent deletion. It allows for the browsing of photos and videos that a user has marked for deletion, but such photos and videos remain on the iPhone for 30 days unless they are either (a) recovered by a user, or (b) permanently deleted by a user. *See* Apple, *Delete or hide photos and videos on iPhone*, https://support.apple.com/guide/iphone/delete-or-hide-photos-and-videos-iphb4defbde9/ios (last visited Mar. 22, 2023).

## II.  APPLICABLE LAW

Evidence of uncharged other acts that is otherwise inadmissible under the general prohibition against character evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).  Four factors, initially set out in *Huddleston v. United States*, 485 U.S. 681 (1988), guide the district court's inquiry into whether Rule 404(b) evidence is properly admitted: (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant under Rules 401 and 402; (3) the probative value of the evidence must not be substantially outweighed by its potential for unfair prejudice under Rule 403; and (4) the district court must, upon request, instruct the jury to consider the evidence only for the purposes for which it was admitted.  *United States v. Henthorn*, 864 F.3d 1241, 1247-48 (10th Cir. 2017), citing *Huddleston*, 485 U.S. at 691-92.

The list of proper purposes is "illustrative, not exhaustive," and "Rule 404(b) is considered to be an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove *only* criminal disposition.' "  *Id.* at 1248, quoting *United States v. Brooks*, 736 F.3d 921, 939 (10th Cir. 2013) (emphasis in original).  "Although the text of Rule 404(b) indicates that other act evidence 'may' be admissible for purposes other than to show criminal propensity, its legislative history makes it clear that Congress did not intend that evidence offered for a proper purpose under the rule be excluded thereunder[.]"  *United States v. Tan*, 254 F.3d 1204, 1208 (10th Cir. 2001). "Proving intent is always a proper purpose under Rule 404(b)."  *Id.* at 1208 n. 3.

As outlined by the Tenth Circuit, the offense of attempting to violate 18 U.S.C. §§ 2251(a) and 2251(e) requires the following elements:

> (1) the defendant *attempted* to employ, use, persuade, induce, entice, or coerce a child to engage in sexually explicit conduct;

4

(2) the defendant believed the child was under the age of 18;

(3) the defendant engaged in this behavior *for the purpose of* producing a visual depiction of such conduct;

(4) the defendant knew or had reason to know that the visual depiction would be transported or transmitted using any means or facility of interstate or foreign commerce or affecting interstate or foreign commerce or mail or the materials used to attempt to produce the visual depiction were mailed, shipped, or transported, including by computer, in interstate or foreign commerce; and

(5) the defendant *took a substantial step* toward the commission of the offense.

*United States v. Isabella*, 918 F.3d 816, 848 (10th Cir. 2019) (emphasis added). "[P]roducers may be convicted under § 2251(a) without proof they had knowledge of age." *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 76 n. 5 (1994).

### III.  ANALYSIS

#### A.  Proposed evidence

1.   *J.S., Okay High School employee*

J.S. began working at Okay High School in approximately 2011 and left around 2016 or 2017.  After Defendant resigned, Hayes, the principal of Okay High School, consented to the FBI's search of the school-owned computer equipment that Defendant used while he was employed there, including an Apple desktop computer.  A nude photograph of an adult female in a shower was located on the hard drive, and agents showed a sanitized version of the photograph to J.S.  She identified herself as the female in the photograph and recognized the shower curtain as having been from her apartment in Wagoner, Oklahoma, where she lived around 2015 or 2016.  She stated that she worked at Okay High School when the photograph was taken.

J.S. told agents that she did not have much interaction with Defendant, would never have knowingly sent the photo to Defendant, and did not know how the photograph could have gotten on Defendant's computer.  She stated that she often forgot her phone and left it around the school

and that it would have been possible for Defendant to have taken her unlocked phone, plugged it into his computer, and transferred the photograph from her phone to his computer.

Further forensic analysis of the desktop computer established that Defendant emailed the nude photograph of J.S. to himself, from his iCloud account to his Gmail account, and forwarded the photograph to his wife using the misleadingly innocuous subject line "Paper forms – [S.]," using J.S.'s real last name. (A second photograph was attached to the email message that also originated from Defendant's school-owned computer. The photograph depicted two adult female breasts. Because it was not possible to sanitize this image, agents did not ask J.S. to identify herself in the second photograph.)

   2.  *A.T., Okay High School Class of 2017*

A.T. attended Okay High School, where Defendant was her yearbook adviser during her senior year. After she graduated, Defendant began to send messages to A.T. indirectly asking her for inappropriate photos of herself. Eventually, he directly offered her $50 for such pictures. A.T. declined, to which Defendant responded that he wanted to offer A.T. a way to make some extra money. A.T. related this to her fiancé, who texted Defendant, calling Defendant a "pervert" and telling him to leave A.T. alone. A.T. also told her friend B.C.

   3.  *B.C., Okay High School Class of 2017*

B.C. also graduated from Okay High School in 2017. Defendant was her yearbook adviser. The year after she graduated, B.C. received a text message from Defendant. Attached to the message was a screenshot of a message that Defendant had received from A.T.'s fiancé, calling Defendant a "pervert" and telling Defendant to leave A.T. alone (thus corroborating A.T.'s information). According to B.C., Defendant acted as if he was unsure why A.T.'s fiancé would call him a pervert.

By the time Defendant contacted B.C., however, A.T. had already told B.C. that Defendant had solicited inappropriate photos of A.T., so B.C. told Defendant that Defendant's having solicited photos from A.T. was a likely explanation. To which Defendant supplied the non sequitur, "Well, what can I say, I'm a guy and I like boobs." B.C. told Defendant that it was wrong of Defendant to have made such a request of A.T. because she was his former student and Defendant was married.

B.C. also recalled that K.G. approached her at a basketball game and told B.C. that Defendant had asked K.G. to send him inappropriate photos of herself.[2]

4.   *C.T., Okay High School Class of 2018*

Defendant was C.T.'s yearbook adviser during her junior and senior years at Okay High School. C.T. said that Defendant frequently made inappropriate comments to his students, including asking female students how often they had sex with their boyfriends. She recalled that Defendant's classroom had an Apple desktop computer that the yearbook staff used.

On the hard drive of Defendant's school-owned Apple desktop computer, the FBI located a photograph of a young female in a shower. The photograph depicted part of one of the female's nipples. C.T. identified herself as the female in the photograph. She also identified several other photographs that were recovered from Defendant's school-owned computer as having originated from her phone's camera roll. While she had no memory of having plugged her phone into the Apple desktop computer, C.T. said that if Defendant had asked her for her phone, she would have given it to him. She said that she would never have knowingly transferred any of her own photos to Defendant's computer.

---

[2] *See* Part III-A-5.

5.      *K.G., Okay High School Class of 2021*

Defendant was K.G.'s teacher from seventh grade until her graduation from Okay High School.  He was also her yearbook adviser and the father of her best friend, A.S.  According to K.G., Defendant traded favors with students, such as his permission to show up late, for the use of students' cell phones.  K.G. remembered having seen Defendant post pictures of himself to T.R.'s Snapchat account so that it appeared that T.R. had posted the pictures of Defendant.

After K.G. graduated from Okay High School, Defendant continued to communicate with K.G.  In July 2021, months after she graduated, Defendant engaged in a conversation with K.G. about sex and masturbation by text message.  For example, Defendant said to K.G., "Like two fingers, some good porn, and you're done in three minutes," and "I'm also so glad that we have reached a point that when you need some dick you just text me."

K.G. said that Defendant "indirectly and slyly asked for inappropriate pictures from" her on about 10 occasions.

In or about May or June 2021, not long after K.G. had turned 18 years old, K.G. asked Defendant, by text message, if she could have the password to his Netflix account.  Defendant told K.G. that she would have to give him her Snapchat password.  When K.G. asked him why, Defendant said that he wanted to find pictures of K.G. in her Snapchat account.  K.G.'s then-boyfriend observed this exchange and admonished Defendant.  Defendant answered K.G.'s then-boyfriend that Defendant's son, not Defendant, had been having the conversation with K.G. about her Snapchat password.  K.G. did not believe that Defendant's son had sent those messages.  (Below, another former student, T.R., describes a similar scheme to extort a student's Snapchat password, suggesting that the messages came from Defendant and not his son.)

6.  A.R., Okay High School Class of 2022

Defendant was A.R.'s eighth-grade teacher and yearbook adviser at Okay High School. A.R. described Defendant as a father figure to her. A.R. said that she and two of her friends had had similar experiences with Defendant asking to use their cell phones when they were his students. Defendant told A.R. that he needed to use her cell phone to set up his printer. Defendant kept A.R.'s phone for three hours purportedly for this reason — far longer than installing a printer can reasonably be expected to take. A.R.'s friend had the same experience with giving her phone to Defendant at his request so that he could set up his printer.

7.  T.R., Okay High School Class of 2022

T.R., a cousin of J.C., said that Defendant had been her teacher beginning when she was in the seventh grade and that she became best friends with Defendant's daughter, A.S. Like A.R. and J.C., T.R. came to spend so much time at the Sloat residence that she described Defendant as "like a second father" to her and, like J.C., would frequently spend nights at their home. She described several interactions with Defendant that made her feel uncomfortable.

During her junior or senior year at Okay High School, A.S. asked T.R. if A.S. could spend the night at T.R.'s house. When T.R. sent a text message to Defendant to ask for his permission, Defendant "said yes, but only if [T.R.] would provide [Defendant] with her password to her Snapchat account."

T.R. said that she once caught Defendant attempting to access the My Eyes Only album in her Snapchat account, which can only be accessed with a passcode.[3]

---

[3] Snapchat is a social-media application that allows users to exchange photos, video, and text. It is celebrated for secrecy because "Snaps," or individual instances of photos or videos, generally disappear unless a user affirmatively saves them. Snap, Inc., the maker of Snapchat, provides the following description of its My Eyes Only feature: "My Eyes Only is for Snaps that you want to keep extra private! You can move Snaps and Stories in your Memories to My Eyes Only — then you can only see them after you enter your passcode." Snap, *How Does My Eyes Only work?*,

On a day when T.R. was spending time at the Sloats' house, T.R. was changing into a two-piece bathing suit in A.S.'s room. As she was changing, she heard Defendant knock on A.S.'s bedroom door and begin to walk in without waiting for an answer, causing T.R. to have to pull her bottoms up quickly. When T.R. told Defendant that she was changing, Defendant responded enthusiastically, "Ooh, let me see."

T.R. said that Defendant, who was her yearbook adviser, would often ask students, including T.R., to give him their cell phones. One time, it was purportedly to change photo settings. Another time, to update the phone's software. T.R. knew, however, that Defendant was opening applications on her phone, such as Snapchat, that had nothing to do with photo settings or software updates, because after giving her phone to Defendant, T.R. would be contacted on Snapchat by her friends asking T.R. "who the guy was." K.G. independently recalled having seen pictures of Defendant on T.R.'s Snapchat account.[4]

### B.  Application of the *Huddleston* factors

*1.    The evidence is offered for proper purposes.*

The government offers the proposed evidence that is described in Part III-A for four proper purposes: first, to prove Defendant's motive to capture the unclothed victim in his bathroom, that is, his sexual arousal or gratification; second, to prove Defendant's intent to produce sexually explicit imagery of the victim as she used his bathroom; third, to prove Defendant's common plan of gaining access to his victims' private, sexually explicit imagery through the use of technology and without the victims' knowledge or consent; fourth, to prove that the sexually explicit imagery of J.C. that was actually produced by Defendant's cell phone was not produced by accident.

---

https://help.snapchat.com/hc/en-us/articles/7012317537556-How-does-My-Eyes-Only-work- (last visited Mar. 21, 2023).
[4] *See* Part III-A-5.

*2.     The evidence is relevant.*

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action." Fed. R. Evid. 401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402.

Three themes underlie the proposed evidence taken as a whole, each of which directly speaks to the proper purposes for which the evidence is offered and emphasizes its relevancy. First, Defendant has engaged in a pattern of immoral behavior that subjugates the privacy interests of his victims to his sexual arousal and gratification. His computer was found to have contained sensitive images of a fellow school employee, J.S.,[5] and his underage student, C.T.,[6] and his forwarding J.S.'s images to himself under the cover of a false subject line ("Paper forms") showed both his knowledge of the sensitive images and his capacity to resort to subterfuge to violate his victims' privacy. Defendant's disguising deliberately stolen private images as a harmless set of "forms" invites comparison with his disguising a deliberately placed recording device as an innocently mislaid cell phone. Defendant's knowing possession of private images of J.S. and C.T. — in both cases without the subjects' knowledge — is compelling circumstantial evidence that he knowingly attempted to produce imagery of J.C. engaged in sexually explicit conduct in his bathroom, also without her knowledge.

A second theme that runs through all of the proposed evidence is Defendant's familiarity with technology in general, and with cell phones in particular. He either accessed or attempted to access the Snapchat accounts of K.G.[7] and T.R.[8] He accessed the physical cell phones of J.S.,

---

[5] Part III-A-1.
[6] Part III-A-4.
[7] Part III-A-5.
[8] Part III-A-7.

C.T., A.R.,[9] and T.R. When he solicited the use of his students' cell phones, Defendant posed as an expert, keeping their phones for extended lengths of time and offering to update software or install a printer. He would not assume the role of the clumsy, hapless luddite until later, when he tried to explain away to Hayes the fact that his cell phone had captured video of a child using the toilet.

This theme is an important component of the government's theory of the case, which is that Defendant is not the type of novitiate cell phone user who accidentally activates a phone's videorecording function. Defendant is so well acquainted with cell phones that he regularly asked to use the cell phones of the juveniles over whom he held authority, and in many cases, the owners of the cell phones would find out only later what Defendant had done with their phones. Recall that neither J.S. nor C.T. knew that Defendant had *ever* accessed their phones, though sensitive images of their bodies were found on his computer, and that T.R. discovered that Defendant had used her phone to post pictures of himself to her Snapchat account. The proposed evidence shows that, when it came to cell phones, Defendant was not the one who had problems or questions. He was the one who solved them.

Finally, the proposed evidence demonstrates Defendant's sexual fixation with teenage girls and his habitual method of approaching them and gaining their trust as a teacher, adviser, and close friend of his daughter, A.S. Six of the seven witnesses discussed above were targeted by Defendant based on their status as his former student. J.C., the victim named in the indictment, was 14 years old when her pubic area was captured by Defendant's deliberately placed cell phone, recording video of her using the toilet. Like the other girls, Defendant came to know J.C. through his status as her teacher. Both K.G. and T.R. described Defendant's daughter, A.S., as their best friend,

---

[9] Part III-A-6.

which increased Defendant's access to them and increased their comfort levels around him, leading in both cases to Defendant violating teacher-student boundaries: making sexual comments and requesting inappropriate pictures from K.G., trying to access T.R.'s private Snapchat pictures, and leering at T.R. in a bathing suit. In a similar way, J.C. became so close with Defendant's daughter that she frequented Defendant's house and spent the night there. J.C., T.R., and A.R. all described Defendant as father figures to them. J.C.'s inherent trust in Defendant explains how she thought nothing of showering in his shower, and how Defendant intended and planned to make her his next victim.

> 3. *The probative value of the evidence is not substantially outweighed by its potential for unfair prejudice.*

Evidence against a defendant in a criminal case is designed to be prejudicial. The proposed evidence is not *unfairly* prejudicial because it provides the jury with a fuller perspective of Defendant's motive, intent, and plan to commit the offense alleged in the indictment, as well as his absence of mistake in so doing. Because Defendant has already asserted, and at trial can be expected to expound on, his lack of intent to record J.C. as she used his bathroom, the proposed evidence is highly probative of the ultimate question that will be settled at trial: was Defendant's recording of J.C. purposeful? "Proving intent is always a proper purpose under Rule 404(b)." *Tan*, 254 F.3d at 1208 n. 3. *See also Henthorn*, 864 F.3d at 1249 (holding that it was "plainly proper" for the district court to admit Rule 404(b) evidence "to rebut the defense of accident or to show plan and intent").

Tenth Circuit case law supports the liberal admission of evidence under Rule 404(b)(2). "Rule 404(b) is considered to be an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove *only* criminal disposition." *Henthorn*, 864 F.3d at 1248, quoting *Brooks*, 736 F.3d at 939 (emphasis in original). Here, most of the proposed evidence cannot prove

13

criminal disposition *at all* because most of the other acts do not violate criminal laws. And those acts that are of questionable legality, such as copying private images to Defendant's computers from the victims' phones without their knowledge or consent, do not tend to prove *only* criminal disposition because they are highly probative of Defendant's motive, intent, plan, and absence of accident.

  4.  *The district court will provide a limiting instruction to the jury.*

The government will submit, with its proposed jury instructions, an instruction admonishing the jury to consider the proposed evidence only as it relates to Defendant's motive, intent, plan, and/or absence of accident.

### IV. CONCLUSION

The *Huddleston* factors support the admission of the proposed evidence reviewed in the government's notice under Federal Rule of Evidence 404(b)(2).

          Respectfully submitted,

          CHRISTOPHER J. WILSON
          United States Attorney

s/  Anthony C. Marek
   ANTHONY C. MAREK
   State Bar of Michigan #P76767
   Assistant United States Attorney
   520 Denison Ave.
   Muskogee, OK 74401
   (918) 684-5100
   Anthony.Marek@usdoj.gov

**CERTIFICATE OF SERVICE**

  I hereby certify that on June 14, 2023, I electronically transmitted the attached documents to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrant:

 Matthew R. Price
 Counsel for Defendant


          s/  Anthony C. Marek
             ANTHONY C. MAREK
             Assistant United States Attorney